LUALEMANA E. FAOA, Plaintiff

v.

ATUALEVAO SOSENE ASIFOA and LEFOTU TUILESU,
Defendants

LUALEMANA E. FAOA for LUALEMANA FAMILY and
VILLAGE OF A'ASU. and TUITELE K.A. LE'OSO for
VILLAGE OF LEONE, Plaintiffs/Objectors

v.

A'OLOAU VILLAGE COUNCIL, Defendant/Claimant

A.U. FUIMAONO and the VILLAGE OF A'OLOAU,
Plaintiffs

v.

TOLUAO FETALAIGA, Defendants

TUANAITAU TUIA, AVA VILI, TOLUAO FETALAIGA for
themselves and the VILLAGE OF PAVA'IA'I,
Intervenors

LEPUAPUA STANLEY MASSEY UTU, for himself and
on behalf of the UTU FAMILY, Intervenor

TUILEFANO VAELAA, TUIAGAMOA, TUIOLEMOTU, and
TUITASI for "AIGA AITULAGI," Intervenors

High Court of American Samoa
Land and Titles Division

LT No. 29-86
LT No. 41-86
LT No. 12-87

August 6, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and VA'A, Associate Judge.

Counsel: For Plaintiffs Lualemana, Tuitele, and the Villages of A'asu and Leone, Afoa L.S. Lutu
For Plaintiffs Fuimaono and the Village of A'oloau, Gata E. Gurr
For Defendants Atualevao and Lefotu, Charles V. Ala'ilima
For Intervenors Tuanaitau, Ava, Toluao, and the Village of Pava'ia'i, Tau'ese P. Sunia
For Intervenors Utu family, Togiola T.A. Tulafono
For Intervenors Aiga Aitulagi, Tuiasosopo Mariota II

These consolidated actions concern the ownership of over 400 acres of land on and around Mount Olotele, comprising the village of A'oloau Fou and its environs.

In 1986 an injunctive action (LT No. 29-86) was brought against Atualevao Sosene Asifoa and Lefotu Tuilesu, two chiefs of A'oloau, by Lualemana, the principal chief of the neighboring village of A'asu. Lualemana claimed that Atualevao and Lefotu had begun cultivating portions of A'asu lands called Tuaolo and Faleselau. Fuimaono and the

Village Council of A'oloau intervened, asserting that the disputed land was part of A'oloau and not A'asu.

Shortly thereafter Fuimaono and the Village Council offered for registration as "a communal land of the Village of A'oloau" two parcels comprising about 420 acres. Objections were filed by Lualemana on behalf of his family and the village of A'asu and by Tuitele on behalf of the village of Leone. The registration case was referred to the High Court and designated LT No. 41-86.

In November of 1986 several chiefs of Pava'ia'i, another neighboring village, moved to intervene "for themselves and the village of Pava'ia'i" in the injunctive action, LT No. 29-86. If any party had contested this motion it would probably have been denied, since it is now clear that the Pava'ia'i chiefs had no interest in the area that was being disputed in LT No. 29-86. Rather, their objection was to certain parts of the A'oloau survey offered for registration in the other case, LT No. 41-86. These areas were at the opposite end of the 420-acre survey from the area being disputed with Lualemana in the injunctive action. The Pava'ia'i chiefs had, however, missed the statutory 60-day deadline for filing objections to the survey, perhaps because it was posted only in A'oloau and not in Pava'ia'i. Rather than state this lack of notice as a ground for allowing an otherwise untimely objection in the registration action, they sought admission through the side door represented by the Lualemana injunctive action. Hearing no objection, and thus far unaware that the intervenors planned to assert no interest in the subject matter of the action in which they sought to intervene, the Court granted the motion.

The third and last of the cases now before us, LT No. 12-87, was filed early in 1987. In this case Fuimaono and the A'oloau Village Council sought an injunction against Toluao Fetalaiga of the village of Pava'ia'i. They alleged that he had recently begun occupying and cultivating part of the land recently offered for registration by the village of A'oloau and had thereby destroyed crops belonging to various A'oloau families.

The cases were consolidated for trial. After consolidation yet another set of parties, the "Aiga Aitulagi," moved to intervene. The motion was granted without objection. The Utu family of A'oloau also intervened. After several postponements, the consolidated cases were tried on May 16-18, 1990. The record was held open for certain post-

36

trial submissions, and the case was then taken under advisement. We address herein the claims asserted by each of the parties.

## I.  The A'oloau Survey

The evidence establishes that the two parcels included within the A'oloau survey represent, with certain limited exceptions discussed below, lands that have been occupied and cultivated from virgin bush at various times since 1943 by various families of A'oloau and that are the property of those families. In 1946, when the village completed its move up the mountain from its former location on the North Shore, a boundary was settled with A'asu which by then had begun a similar migration. *See Lualemana v. Brown*, 3 A.S.R. 348, 350 (1958). The survey now offered for registration generally respects that boundary and the pattern of settlement of the two villages over the ensuing 44 years. In one place, however, it transgresses the traditional boundary and also encroaches on a tract of land already registered as the property of the Lualemana Family of the village of A'asu. This encroachment is reflected on the composite map designated Exhibit 13, in the overlap between "Parcel B-Two" of "A'oloaufou" and the 85.66 acre registered survey of "Tuaolo & Faleselau." Not only has the latter survey been registered in accordance with law for over 20 years, it also more nearly reflects the pattern of settlement than does the A'oloau survey. The boundary line drawn by the Lualemana/A'asu survey heads northward from the main road at a point corresponding to the intersection with an old road to A'asu Tuai. Witnesses for all parties acknowledge this intersection to be a turning point in the boundary between the two villages. The A'oloau survey, in contrast, turns northward from the main road at an apparently random point and includes houses along the main road belonging to A'asu people whose right to live there has not previously been disputed. Indeed, the principal A'oloau witness seemed surprised to find that his village's survey included these houses.

A small portion along the southern boundary of the A'oloau survey is also contested by Tuitele on behalf of the village of Leone. The evidence reflects that a settlement of this boundary was reached between Fuimaono and Tuitele in or around 1988, in which Fuimaono on behalf of the Village Council conceded the disputed portions (reflected in Tuitele Exhibit 2, Drawing RPS2-5-30-88) to the Leone claimants. Although, for reasons we shall discuss, it is not clear that this agreement is binding on any particular A'oloau family that may claim to own the land, it is sufficient to support the only relief requested by Tuitele in the

37

present action, i.e., the denial of the offer of registration of the disputed portions as property of the Village Council of A'oloau.

The Pava'ia'i intervenors object to a somewhat larger area in the southern and eastern portions of the A'oloau survey. They have introduced their own survey of the area they call "Lago," said to belong to the "Ali'i and Families of Pava'ia'i." Their witnesses testified that this survey reflects the traditional boundary between the county (a term now used to describe a traditional grouping of villages) to which Pava'ia'i belongs and that to which A'oloau and A'asu belong. One Pava'ia'i witness also testified that his father had once cultivated a plantation somewhere in Lago.

We are not convinced that Pava'ia'i people ever cultivated or occupied Lago. If they ever did, they seem to have abandoned it long before the A'oloau people arrived. The Pava'ia'i witnesses' objection to this part of the A'oloau survey appears to be grounded primarily in their conviction that the survey transgresses an ancient political boundary. The principal A'oloau witness, on the other hand, places the traditional boundary at the bottom of the mountain near what is now the center of Pava'ia'i. Perhaps both are right: the ancient history of this part of Tutuila seems to be one of domination first by one powerful chief and then by another, and it is only natural that the successors of each should cherish the memory of an age in which the men were stronger and the boundaries further. *See Lualemana v. Chiefs of Aitulagi*, 4 A.S.R. 383 (1963). The evidence establishes, however, that most of the cultivations in the Lago area are those of A'oloau people who came there at some time after 1946 but well before the 1980s when Pava'ia'i began to assert or reassert its claim. Nor is there any evidence that the A'oloau people displaced people from Pava'ia'i or anywhere else when they came to Lago; its traditional use by Pava'ia'i, if any, was as a place to gather and prepare for frontier skirmishes, presumably before the coming of the present government in 1900.

In assessing a similar claim by Pava'ia'i to traditional ownership of land even further up the mountain toward the center of A'oloau and A'asu Fou, the Court observed that "[i]f prior to the war a Pava'ia'i chief and his family had cleared from the bush the land . . . and put in plantations on it . . . it would have been that family's communal property, but such was not the case. There was no occupancy or possession by the Pava'ia'i people but only an occasional visit to the bush there . . . ." *Lualemana v. Brown, supra*, at 352-53. Such use was insufficient to defeat the claim of people who came later to clear the

38

area, make plantations, and occupy it continuously. *Id*. We reach the same conclusion with respect to almost all the land within the Aʻoloau survey that is also within the Pavaʻiaʻi survey.

An exception is a small strip along the eastern boundary of the Aʻoloau survey, appearing on the topographical map designated Atualevao Exhibit 12 as the eastern slope of an 1183-foot peak. This land does not appear to be cultivated by anyone, and it is just uphill from a cinder pit long used by Tuanaʻitau and Toluao of Pavaʻiaʻi and held in *Leomiti v. Toluao*, 11 A.S.R.2d 49 (1989), to be the communal property of those two families. This area is also quite close to a tract held in the same case to be the property of the Leomiti family of Pavaʻiaʻi and to another tract which, although outside the Aʻoloau survey, has long been occupied and cultivated by Lefotu of Aʻoloau and was held to be that family's communal property in *Leomiti*, *supra*. We have not been presented with composite survey maps enabling us to determine the overlap, if any, between the surveys by the Villages of Aʻoloau and Pavaʻiaʻi and the various tracts already registered as the land of Toluao, Tuanaitau, Leomiti, Lefotu, or other families of the two villages.

As our discussion of this area on the eastern border indicates, the evidence in the present case is insufficient to enable the Court to draw a precise boundary between these two villages. Nor is it necessary or even appropriate for the Court to draw such village boundaries in the context of a land registration case. For, as the Court held in *Olo v. Fuimaono*, AP No. 27-81 (April 18, 1982), land can only be registered by its owner, and its owner is almost always a family rather than a village. In *Olo v. Fuimaono* the Appellate Division reversed a Land and Titles Division decision to the effect that certain land belonged jointly to the villages of Leone and Aʻoloau. The Appellate Division observed that "[r]arely has there been a situation where a village itself owned property in its own name." *Id*., slip opinion at 4. With one limited exception, not applicable to that case or the present one, "the concept of village ownership of land proposed in this case is contrary to Samoan custom and tradition." *Id*.

It is clear that at least some families of Aʻoloau regard their lands within the Aʻoloau survey as their own property, not the property of the village, and no evidence has been offered to rebut the presumption that the land is held in accordance with the usual Samoan customs governing land ownership. Accordingly, the village survey cannot be registered. If particular families of Aʻoloau wish to offer their lands within the survey for registration, they are of course free to do so.

39

We do not mean to imply that the drawing of village boundaries is of no use whatever. Indeed, the settlement of such a boundary between A'oloau and Pava'ia'i, along the lines of actual cultivation and occupation by families of the two villages during the last forty years or so, might help to avert future controversies. But the law requires registration of any tracts on either side of such boundaries to be by the owners, not the villages. A.S.C.A. §§ 37.0101 et seq.; *Olo v. Fuimaono, supra.*

## II.     *The Lualemana Injunctive Action*

In the action that precipitated these cases, Lualemana sought an injunction against the plantations of two A'oloau families within the Lualemana family's registered survey. It is worth noting that this survey comprises most if not all of A'asu Fou. Such a registration was possible only because of the unusual fact that every family in A'asu stipulated that it was part of the Lualemana family and that its lands in A'asu Fou were held in its capacity as part of that family. *Asu Village Chiefs v. Village of Asu*, CA No. 40-1961 (August 10, 1961).

A valid registration effected in accordance with statutory procedures establishes a title good against the world. *See* A.S.C.A. §§ 37.0101 et seq.; *Ifopo v. Siatu'u*, 10 A.S.R.2d 66 (1989). As counsel for Atualevao and Lefotu points out, however, a registration which appears on the face of its own record not to have been conducted in accordance with the statutory procedures conveys no title. *Faleafine v. Suapilimai*, 7 A.S.R.2d 108 (1988). One such facial defect is failure to post notices and announce the survey in the village where the land is actually located. *Afualo v. Fanene*, 15 A.S.R.2d 48 (1990).

In the present case the witnesses for Atualevao and Lefotu say they never saw any notices of the 1961 Lualemana survey posted in A'oloau, nor did they hear any announcements. The Court file contains a certificate of public oral notice in A'asu but not in any other village. However, the file also contains a letter from the Clerk of the High Court to the pulenu'us of A'asu, Pava'ia'i, Faleniu, and A'oloau requesting that notices be posted in each of these villages. This letter is unusual if not unique, and indicates that the Court or an officer thereof foresaw exactly the problem now raised by these defendants.

From the record we cannot tell whether the Clerk's request was honored in other villages than A'asu. It does appear, however, that at least some notice was given in A'oloau: the posting place for A'asu is a

telephone pole on the main road that separates that village from Aʻoloau, and a notice visible in one village would be equally visible in the other. Moreover, the transcript of the 1961 Court hearing indicates that Fuimaono, the principal matai of Aʻoloau, was actually present at the hearing. Indeed, he seems to have acted as a mediator between Lualemana and the objectors to the survey.

In any event, in order to prove the registration invalid the defendants would have to establish that the land in question is part of Aʻoloau rather than Aʻasu. This they have not done. The land in dispute between them and Lualemana is located along a road between Aʻasu Fou and Aʻasu Tuai, at some distance from the point where that road diverges with the old road to Aʻoloau Tuai. Although one of the defendants testified that a Lualemana made a boundary settlement favorable to the defendant at some time during the 1970s, this sheds little or no light on where the boundary was in 1961. The presence of Fuimaono at the hearing and his failure to object suggests a consensus that this land was part of Aʻasu rather than Aʻoloau. Notice in Aʻasu would therefore have been sufficient.

Finally, however, there is a world of difference between a Court's noting the facial invalidity of documents filed in the office of the Territorial Registrar, as we did in *Faleafine*, and declaring that a prior judicial decision is null and void, as counsel for these defendants would have us do here. The Court in 1961 had the whole record before it, including the certificate of notice and the letter from the Clerk of Court to the four pulenuʻus --- and perhaps also including other documents that have since gone missing as so many Court documents unfortunately do. The Court then was in a far better position than we are to determine to which village the land was generally regarded as belonging, the circumstances under which constructive and/or actual notice was given, and the other issues material to determining whether the land should be registered. The Court concluded, after some deliberation, that the land was the property of the Lualemana family and should be registered as such. To ignore or nullify such a decision thirty years later, when witnesses have died and memories have faded, even if it would not exceed our power, would be imprudent and unjust.

Atualevao and Lefotu also claim that they occupied the land for twenty years after 1961, thereby obtaining ownership under the adverse possession statute then in force. The evidence fails to establish, however, that defendants' occupation of land within the Lualemana survey was open, notorious, continuous, or exclusive for the full twenty

41

years. Indeed, it is not at all clear when defendants extended their plantations into the Lualemana survey; and the record affirmatively suggests some discontinuity in the maintenance of defendants' plantations.

We are also unpersuaded by the testimony of one of the defendants to the effect that a former Lualemana re-settled the village boundary along the old road now claimed by the defendants as their boundary. It is undisputed that Lualemana only pointed to this road as the boundary at the place where it intersects the government road. This is more or less consistent with the boundary reflected in the Lualemana survey. Defendants would have us infer that Lualemana also meant to designate the old road as the boundary all the way to where defendants' plantations are, although by that point it digresses from the boundary of the registered Lualemana survey and although there is no evidence that Lualemana said anything one way or the other about how far the road extended as a boundary. We decline to draw such an inference.

Accordingly, the Lualemana family is entitled to an order enjoining defendants from further occupation or cultivation within its registered survey.

### III.    The Injunctive Action Against Toluao

Although the A'oloau Village Council did not prove its right to register its survey, it did prove that the lands in the "Lago" area, with the exception discussed in Part I of this opinion, have been occupied and cultivated by families of A'oloau. In this action, although not in the registration action, the interests of the Village Council were identical to those of the various A'oloau families whose plantations were displaced when Toluao began occupying this area in the mid-1980s, and no party has objected to the Village Council's standing to act as an agent for these families. Accordingly, an order will issue enjoining Toluao from further occupation or cultivation of land within the A'oloau survey, with the exception of the area along the eastern boundary described in part I of this opinion.

The A'oloau parties also request damages for crops destroyed by Toluao, but did not prove the amount of any such damages. Such relief will therefore be denied.

### IV.    The Utu Intervention

42

The Utu family of A'oloau intervened to protect its rights to a small parcel in the Lago area that is within both the A'oloau and the Pava'ia'i surveys, and which Toluao had begun to occupy and cultivate. All parties have stipulated that this parcel is the communal land of the Utu family, with the exception of Lefotu who claims that the Utu survey encroaches on his registered survey of land called Lagomau (an altogether different land than the one involved in the dispute between Lefotu and Lualemana). Counsel for Lefotu and Utu requested that the Court not adjudicate this conflict. As we have determined that the A'oloau Village Council survey cannot be registered, and that Toluao should be enjoined from further occupation of Lago, there would be nothing left for us to adjudicate even in the absence of the stipulations. (There was never any question of registration of the Pava'ia'i survey, which was offered only as an exhibit; and the Utu family's request for crop damages from Toluao has presumably been waived by the stipulation between counsel for these two parties, which does not mention such damages.)

### V. The "Aiga Aitulagi" Intervention

The ancestors of the Aiga Aitulagi appear once to have exercised political authority and military power over a large area of western Tutuila including much or all of the area now in dispute. *See Lualemana v. Chiefs of Aitulagi*, 4 A.S.R. 383 (1963). In the present case, however, the Aiga Aitulagi presented no evidence of occupation or cultivation. Actual occupation with a claim of ownership --- not the exercise of power over the actual occupants at some time in the distant past, nor even present political authority over a village, county, or district --- is the best evidence of land ownership under the laws of American Samoa. *See id.* at 402; *Seva'aetasi v. Fanene*, 9 A.S.R.2d 118 (1988).

The claim of the Aiga Aitulagi to ownership of A'oloau Fou is barred in any event by collateral estoppel. The identical claim was raised and rejected in *Tuilefano v. Government of American Samoa*, 4 A.S.R. 594 (1964). Although that case concerned the ownership only of a small parcel deeded by the chiefs of A'oloau to the government for a school building, the issues and contentions in the case were identical to those now raised herein by Aiga Aitulagi. The Court's resolution of those issues and contentions is therefore binding on the parties to the case, including Fuimaono, the Village Council of Aoloau, and the Aiga Aitulagi.

### VI. Conclusion and Order

43

Judgment shall issue accordingly, denying registration of the A'oloau survey; enjoining Atualevao and Lefotu, their aigas, assigns, and those acting in concert with them, from further activities within the Lualemana survey; enjoining Toluao from further activities within the A'oloau survey, with the exception of those parts described in Part I of this opinion; declaring the land within the Utu survey (Drawing No. 32-15-89) to be the communal property of the Utu family, with the exception of such areas as may encroach on any registered survey, and with the understanding that this declaratory judgment is binding only on the parties to these consolidated actions; and denying all other relief requested by any party.

It is so ordered.